The STATE of Ohio, Appellee,

v.

McCLELLAN, Appellant.

[Cite as *State v. McClellan* (1994), 93 Ohio App.3d 315.]

Court of Appeals of Ohio,
Hamilton County.

Nos. C–910953 and C–910954.

Decided Jan. 12, 1994.

*Joseph T. Deters,* Hamilton County Prosecuting Attorney, and *Philip R. Cummings,* Assistant Prosecuting Attorney, for appellee.

*H. Fred Hoefle,* for appellant.

*Per Curiam.*

On May 30, 1991, the Hamilton County Grand Jury returned an indictment against defendant-appellant Huey McClellan, charging him with four counts of rape against Ronald Mirick, in case No. B–913478. On June 21, 1991, defendant was separately indicted, in case No. B–913974, on six additional counts of rape against three other young boys. Defendant pleaded not guilty to all counts. The indictments were consolidated for trial. The trial judge removed the element of force on defense counsel's Crim.R. 29 motion from nine of the ten counts. Following a jury trial, defendant was found guilty of seven counts of rape.

In this appeal, defendant asserts fifteen assignments of error. For the reasons that follow, we find that defendant's assignments are not well taken.

The facts of the case involve numerous incidents where defendant performed fellatio on the boys involved. With respect to the indictment in B–913478, Ronald Mirick testified concerning four incidents when defendant put his hands and mouth on Mirick's penis. The first time was in defendant's car after a movie, in February 1991, and the other three were during times in 1991 that Mirick spent the night at defendant's home in March, the night before Easter, and in April. Mirick also claimed that defendant did the same thing to him in the bathroom at church before Sunday school. He also testified that he saw defendant perform fellatio on Terry Embry and Jason Morsch.

The charges on which the defendant was convicted in indictment B–913974 concerned the rape of two other boys. In January and February 1991, Terry Embry spent the night at defendant's house and defendant performed fellatio on him. Embry testified that defendant did this to him numerous times and that he had seen defendant do it to Mirick and Jason Morsch. There were three other incidents involving Jason Morsch. Morsch testified that on January 19, 1991, defendant sucked on his penis, then masturbated and sucked on Embry's penis. On March 30, 1991, Morsch stated that defendant had him take a bath and masturbate in the bathtub. Defendant then sucked on Morsch's penis and rubbed his own penis on Morsch's buttocks. Morsch also testified that on June 1, 1991, defendant performed fellatio on him. Further, he stated that defendant did these things to him on several other occasions and that he witnessed defendant doing the same things to the other boys named above. All the boys were under thirteen years of age at the time of the incidents.

In his first assignment of error, defendant asserts that he was denied the right to the effective assistance of counsel. In support of this assignment, defendant sets forth five instances where he alleges that counsel was ineffective. In the first two instances, defense counsel brought up, before the jury, the fact that defendant was acquitted of similar charges a decade before and that prior accusations of similar conduct had been made for which defendant was never charged. In the third instance, counsel advanced what is branded as the "ludicrous" theory of defense that the police prosecuted defendant out of vengeance for his earlier acquittal. In the fourth instance, defense counsel failed to object to and, in fact, consented to the admission of allegedly irrelevant and prejudicial materials seized from defendant's home, which the state then relied upon to prove his guilt. In the fifth and final instance, defense counsel failed to object to an allegedly flawed jury instruction on reasonable doubt and to an allegedly improper "*Howard* Charge" (*State v. Howard* [1989], 42 Ohio St.3d 18, 537 N.E.2d 188) and conducted the defense in a manner which generated antipathy toward defendant by the jury.

To establish a claim that the performance of trial counsel was ineffective, a defendant must demonstrate two components. First, he must show that counsel's performance was deficient, such that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment; and, second, a defendant must demonstrate that the deficient performance prejudiced the defense in that counsel's errors were so serious as to render the result of the trial unreliable or the proceeding fundamentally unfair. *Lockhart v. Fretwell* (1993), 506 U.S. ——, 113 S.Ct. 838, 122 L.Ed.2d 180; *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674. The lead opinion in *Lockhart* rejected the standard that to establish prejudice, it must be shown that there is a reasonable probability that, but for counsel's errors, the result of the trial would have been different. According to that opinion, "[i]neffective assistance of counsel claims will be raised only in those cases where a defendant has been found guilty of the offense charged, and from the perspective of hindsight there is a natural tendency to speculate as to whether a different trial strategy might have been more successful." *Lockhart, supra,* 506 U.S. at ——, 113 S.Ct. at 844, 122 L.Ed.2d at 190–191. Further, because of the difficulties in determining whether effective assistance was rendered by counsel in any given case, judicial scrutiny of counsel's performance must be highly deferential and the court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Strickland, supra,* 466 U.S. at 689, 104 S.Ct. at 2065, 80 L.Ed.2d at 694; *State v. Bradley* (1989), 42 Ohio St.3d 136, 538 N.E.2d 373.

In the case *sub judice,* after reviewing the extensive record and trial transcripts, we cannot say that defendant was denied the effective assistance of counsel at his trial. Defense counsel's performance was nothing less than vigorous and impassioned. If, as appellate counsel suggests, trial counsel's strategy was to portray defendant as the victim of police vengeance, we cannot say that such a strategy was unsound or that counsel violated an essential duty to defendant. Counsel attempted to persuade the jury that defendant had been falsely accused before and was acquitted, and that he was being falsely accused, again and should again be acquitted. Such a strategy falls within the range of reasonable professional assistance.

As to the charge that counsel was ineffective for not objecting to the admission of printed materials that were irrelevant and prejudicial, we are not persuaded. As we will discuss *infra,* in the assignments of error concerning the materials seized from defendant's home, there was a sufficient nexus between the materials seized and the crimes with which defendant was charged, such that the jury could properly consider the materials as evidence.

■ Defendant next asserts that counsel failed to object to a flawed jury instruction on reasonable doubt. That assertion is not supported by the record. As soon as the trial judge completed his jury instructions, he asked counsel and the prosecutor if there was anything else. The prosecutor informed the judge that he had left out a paragraph of the reasonable doubt instruction. Defense counsel agreed and asked the judge to reread the paragraph, which the judge did. We conclude that defense counsel's conduct was reasonable.

■ Next, defendant alleges that defense counsel failed to object to an improper *"Howard* Charge." A *Howard* charge is a supplemental instruction given to the jury where the jury has become deadlocked on the question of conviction or acquittal. For reasons that will be discussed under the seventh and eighth assignments of error, we hold that counsel's failure to object to the omission of a phrase in the *Howard* charge was not so serious as to deprive defendant of a fair trial.

Examining all of the instances of alleged ineffectiveness of counsel at trial, we conclude that defendant has not overcome the strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. Defendant has failed to demonstrate the two components necessary to establish that counsel's performance was ineffective. Defendant has not shown that counsel's performance was deficient and that counsel's deficient performance so prejudiced the defense as to render the result of the trial unreliable or fundamentally unfair. The first assignment of error is overruled.

In his second assignment of error, defendant alleges that the trial court erred in admitting into evidence the printed materials seized by police from his residence in violation of his constitutional rights. The third assignment of error charges that the trial court erred by permitting the state to use the printed materials, which arguably advocate pedophilia, to the effect that the nature of the materials constituted proof of defendant's guilt. The fourth assignment of error asserts that the trial court erred to the prejudice of defendant's right to be free from unreasonable searches and seizures by denying his motion to suppress evidence. Because the assigned errors concern many of the same issues, they will be discussed together.

The printed materials at issue include a number of magazines about pedophilia, or "boy love," as it is referred to in the magazines. These include the "North American Man/Boy Love Association ("NAMBLA") Journal" and newsletter, "Paedo Alert News" and "Boy–Love World." In addition, there are a number of books of fiction about pedophilic relationships, several homosexual pornographic magazines and two booklets, "The War Against Child Molesters" and "NO! GO! TELL!" These two booklets advise pedophiles and their young "friends" how to avoid detection by police, what to do if arrested or questioned by police, how to

frustrate police investigation of the case and whether the pedophile should discuss police tactics with his "friend" before anything happens so that he will know that he does not have to cooperate with police.

Under Evid.R. 401, evidence is relevant if it has the tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. Irrelevant evidence is not admissible. Evid.R. 402. Relevant evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues or misleading the jury. Evid.R. 403(A). Defendant did not object to the admission of the printed materials at trial. He now argues that the materials in question are not relevant to the crimes charged and, without a showing of some nexus between the materials and the crimes, the evidence is inadmissible under Evid.R. 402 or, in the alternative, if the evidence is relevant, its prejudicial impact outweighs its probative value. We do not agree with defendant's argument for the reasons discussed below.

■ First, we note that the materials in question advocate, advise and support the reader in an activity which is prohibited by law. Contrary to what defendant alleges, he is not being punished for possessing materials on pedophilia. However, engaging in sexual acts with minors, i.e., rape, is illegal and the fact that defendant had numerous magazines, books and newsletters that encourage their readers to engage in sexual activity with minor boys and offer assistance to avoid prosecution for such acts is, we believe, evidence of defendant's preparation and purpose.

An analogy can be drawn between this situation and one in which, for example, a person is suspected of setting off a bomb. If the police, subject to a search warrant, go into the suspect's home and find various chemicals which, if combined, make a bomb and, furthermore, find a book on how to build a bomb, clearly such evidence is relevant and admissible to show preparation and purpose. In either situation, possessing such materials is not, by itself, illegal, nor can it be said that possession of such materials proves the bad character of the defendant. However, in either example, such evidence is relevant to the crime charged and that relevance provides a sufficient nexus to allow the evidence to go to the jury for its consideration.

■ Defendant also asserts that the trial court erred by denying his motion to suppress evidence. As our discussion above indicates, we find no error in the admission of the evidence. However, we note that the motion to suppress evidence was not a written pretrial motion to suppress all of the printed materials at issue here. The motion to which defendant refers was an oral motion, made mid-trial, in which counsel sought to suppress only a phone register and a

subscriber information list. In his argument to the court on the motion, counsel stated that the two lists were "largely exculpatory." Because defendant has failed to demonstrate how he was prejudiced by the admission of the evidence that he moved to suppress, we conclude that the trial court did not err in denying the motion to suppress. Defendant's second, third and fourth assignments of error are overruled.

In his fifth assignment of error, defendant asserts that the trial court erred in admitting into evidence the testimony of the arresting officer that defendant chose to remain silent after being advised of his rights, and in permitting the prosecutor to comment upon that silence before the jury. The following dialogue between defense counsel and the police officer concerned the photographs seized by police from defendant's home:

"Q [by defense counsel]: Did you ever make any efforts to ascribe who took the pictures?

"A: Couldn't.

"Q: There's data on the back of them, certain—some data as to type paper. Some of them even have—

"A: I would have loved to. I made every effort with Mr. McClellan. Would you mind telling me about this, after he was advised of his constitutional rights. He said I'll make no statements about anything until I talk to him. And we continued talking about the ball game, the weather.

"Q: He told you he would make no statement until I was present?

"A: Absolutely.

"Q: That was his right, right?

"A: Yes, sir.

"Q: And you were in there breaking the walls out of his house?

"A: That's my right.

"Q: I'm not talking about rights. You expect him—and you're a trained police officer, right? You're a sergeant for many, many years, right?

"A: No, sir. For a few months.

"Q: You're a trained police officer for many, many years, right?

"A: Seventeen.

"Q: And a citizen has a right to remain silent when it's obvious he is a suspect of something, right?

"A: Absolutely.

"Q: And it is misconduct on the part of an officer to say that he invoked that right in the presence of a jury. You know that, too.

"MR. TOLBERT: He brought this up.

"MR. BROWN: I did not. He volunteered.

"THE COURT: This is collateral. And the point is, that's right, one has a constitutional right not to make statements. And that's not part of this case, I don't think. So what are we doing?

"MR. BROWN: That's right. And the volunteering of it is an appeal to a jury by a previous decision, especially by a trained police officer.

"THE COURT: I don't understand what's going on exactly. Can we go on with cross-examination?

"MR. BROWN: I will, Your Honor, yes."

■ Our examination of the above exchange leads us to the conclusion that the police officer was responding to a question posed by defense counsel. No further reference was made by the officer as to defendant's silence, nor did the officer imply, either directly or indirectly, that defendant's silence was an indication of his guilt. Counsel made no objection at the time the statement by the officer was made. Instead he engaged the officer in further discussion about the fact that defendant chose not to speak with police until his attorney was present, drawing more attention to that fact before the jury. Even if we were to conclude that the admission of the officer's statement was error, we would hold that it was harmless error because the exchange following the officer's statement, between both defense counsel and the officer and defense counsel and the court, established the fact that the defendant had the constitutional right to remain silent, and defendant has failed to demonstrate that, absent this comment on defendant's silence, defendant would not have been found guilty. See *State v. Thompson* (1987), 33 Ohio St.3d 1, 514 N.E.2d 407.

■ The statement made by the prosecutor, to which defendant objects, was made in closing arguments. The prosecutor stated that "[t]he defendant's not required to make a statement, and he didn't." The United States Supreme Court, as well as the Ohio Supreme Court, has held that a defendant's conviction may be affirmed provided that the comments regarding the defendant's silence are found to be harmless beyond a reasonable doubt. *United States v. Hasting* (1983), 461 U.S. 499, 103 S.Ct. 1974, 76 L.Ed.2d 96; *Thompson, supra; State v. Zimmerman* (1985), 18 Ohio St.3d 43, 18 OBR 79, 479 N.E.2d 862.

In the case *sub judice*, the prosecutor made a correct statement of the law. Such a comment is clearly harmless beyond a reasonable doubt. Defendant's fifth assignment of error is overruled.

In his sixth assignment of error, defendant argues that the trial court erred by incorrectly instructing the jury on reasonable doubt and proof beyond a reasonable doubt. In its charge to the jury, the court initially read the definition of "reasonable doubt" but omitted the definition of "proof beyond a reasonable doubt." After this omission was called to the attention of the court by counsel, the court read the omitted portion of the charge and reread part of the reasonable doubt charge but did not reread the charge in its entirety. Defendant argues that the charge on reasonable doubt and proof beyond a reasonable doubt must be read together. The court's failure to do so, argues defendant, constitutes plain error. We do not agree.

The Ohio Supreme Court has held that any amplification of the statutory definition of "reasonable doubt" must be shown to be both erroneous and prejudicial before the judgment of the trial court will be disturbed. *State v. Van Gundy* (1992), 64 Ohio St.3d 230, 594 N.E.2d 604; *State v. Sargent* (1975), 41 Ohio St.2d 85, 70 O.O.2d 169, 322 N.E.2d 634, paragraph two of the syllabus. Defendant cites no authority for his proposition that the charge on reasonable doubt and proof beyond a reasonable doubt must be read together. The court correctly stated the law, under R.C. 2901.05(D), in its charge, and even though the reading of the charge was segmented, the entire charge was read to the jury. We hold that defendant has failed to demonstrate that the charge given to the jury was erroneous or that he was prejudiced thereby. The sixth assignment of error is overruled.

In his seventh and eighth assignments of error, defendant asserts that the trial court erred by giving the "*Howard* Charge" to the deadlocked jury and by omitting crucial components of the charge concerning the desire to arrive at the truth and the fact that all jurors are subject to an oath. Initially, we note that defendant offers no reason why he believes the court erred by giving the *Howard* charge. Generally, such a charge is attacked on the ground that a jury was not, in fact, deadlocked and so the giving of the charge was premature and resulted in having a coercive effect on the jury. See *State v. Howard* (1989), 42 Ohio St.3d 18, 537 N.E.2d 188. In this instance, defendant has himself characterized the jury as "deadlocked" in his assignment of error. When a jury is deadlocked, the giving of a supplemental instruction to aid the jury in reaching a verdict is entirely appropriate.

In *State v. Maupin* (1975), 42 Ohio St.2d 473, 71 O.O.2d 485, 330 N.E.2d 708, paragraph four of the syllabus, the Ohio Supreme Court held that "[t]he giving of a neutral supplemental instruction, urging the jury to attempt to reach a verdict, upon notification by the jury to the court that it was having difficulty reaching an agreement after deliberations * * *, with no other circumstances present with the potential of coercion of the jury, is not an abuse of discretion."

■ The portion of the *Howard* charge which contained the omission is given below with the omitted portion in italics:

"Jurors for acquittal should consider whether their doubt is reasonable, considering that it is not shared by others, equally honest, who have heard the same evidence, *with the same desire to arrive at the truth and under the same oath.* Likewise, jurors for conviction should ask themselves whether they might not reasonably doubt the correctness of a judgment not concurred in by all other jurors."

Although defense counsel objected to the fact that the *Howard* charge was going to be given, counsel made no objection to "crucial omissions" contained in the charge. The Supreme Court has held that the failure to object to a jury instruction waives any claim of error relative to that instruction, unless, but for the error, the outcome of the trial clearly would have been otherwise. *State v. Underwood* (1983), 3 Ohio St.3d 12, 3 OBR 360, 444 N.E.2d 1332, syllabus.

As our discussion above demonstrates, the *Howard* charge was properly given to the jury when the jury indicated to the court that it was deadlocked. Furthermore, since defendant did not object to the form of the instruction given to the jury at trial, and has failed to show that absent the error in the reading of the instruction, the outcome of the trial would have been different, we hold that any claim of error is waived. Defendant's seventh and eighth assignments of error are overruled.

In his ninth and tenth assignments of error, defendant asserts that the trial court erred by entering a judgment of conviction after a trial laced with prejudicial instances of prosecutorial misconduct, and that defendant was denied effective assistance of counsel by virtue of counsel's failure to object to several instances of prosecutorial misconduct. Defendant offers support for this contention by citing various instances of alleged misconduct by the prosecutor throughout the trial.

■ The test for prosecutorial misconduct is whether the remarks of the prosecutor were improper and, if so, whether they prejudicially affected substantial rights of the defendant. *State v. Lott* (1990), 51 Ohio St.3d 160, 555 N.E.2d 293. An error not objected to at trial is waived, unless the court finds that such error is plain error. *State v. Slagle* (1992), 65 Ohio St.3d 597, 605 N.E.2d 916. To find plain error, the reviewing court must determine whether the alleged error substantially affected the outcome of the trial after examining all of the evidence properly admitted at trial and determining whether the jury would have convicted the defendant even if the error had not occurred. *Slagle, supra.* The key issue is the fairness of the trial, not the culpability of the prosecutor. *Smith v. Phillips* (1982), 455 U.S. 209, 102 S.Ct. 940, 71 L.Ed.2d 78.

With all of that in mind, we conclude that the instances cited by defendant, when viewed both individually and collectively, did not give rise to reversible error. Most of the instances were either not objected to at the time the alleged error occurred or were cured by a corrective statement by the court. The remaining instances either were not supported by the record or involved no demonstrable prejudice. In addition, we are persuaded that none of the errors cited by defendant was so egregious that the outcome of the trial would have been different had the error not occurred.

As to defendant's assertion that in those instances where trial counsel failed to object to the misconduct of the prosecutor, defense counsel was ineffective, we conclude that defendant's argument is without merit. As stated above under the first assignment of error, to show ineffective assistance of counsel, defendant must make a twofold showing of deficient performance with respect to errors so serious as to render the result of the trial unreliable or fundamentally unfair. *Lockhart, supra; Strickland, supra.* Defendant's bare assertion of ineffective assistance with no demonstration of the two components required to establish such a claim is insufficient in law to support his assignment. Consequently, the ninth and tenth assignments of error are overruled.

In his eleventh and twelfth assignments of error, defendant alleges that the trial court lost control of the trial by allowing counsel to "engage in obstreperous conduct" and by "casting aspersions on the defense in the presence of the jury." Our review of the record, including the extensive transcript of the proceedings, does not demonstrate the error of which defendant complains. In a case such as this where the defendant is charged with raping children, the trial is bound to be an emotional, and even volatile, proceeding. Considering the length of the trial, the number and age of the victims, the materials offered into evidence and the fact that defendant took the stand in his own defense, we conclude that the trial court, rather than losing control of the trial, kept things under good control. The eleventh and twelfth assignments of error are overruled.

In his thirteenth assignment of error, defendant asserts that the trial court erred in entering a judgment of conviction when the cumulative effect of the errors committed at trial deprived defendant of a fair trial. Because we have held that the errors asserted above are without merit, we conclude that this assignment of error is also meritless.

In his fourteenth and fifteenth assignments of error, defendant argues that the evidence adduced at trial was insufficient to establish the elements of the offenses beyond a reasonable doubt and that his conviction is contrary to the manifest weight of the evidence. We are unpersuaded.

 Where there is substantial evidence upon which a jury could reasonably conclude that all the elements of an offense have been proved beyond a reasonable doubt, a reviewing court will not reverse a judgment of conviction on the sufficiency of the evidence. *State v. Barnes* (1986), 25 Ohio St.3d 203, 25 OBR 266, 495 N.E.2d 922; *State v. Eley* (1978), 56 Ohio St.2d 169, 10 O.O.3d 340, 383 N.E.2d 132, syllabus. In the trial of a case, the weight to be given the evidence and the credibility of the witnesses are for the trier of fact to determine. *State v. DeHass* (1967), 10 Ohio St.2d 230, 39 O.O.2d 366, 227 N.E.2d 212, paragraph two of the syllabus.

 Our review of the record in this case demonstrates to us that the state presented considerable evidence upon which the jury, as factfinder, could reasonably conclude that defendant was guilty of rape as charged. Additionally, we cannot say that the jury lost its way in resolving conflicts in the evidence such that a new trial must be ordered. The fourteenth and fifteenth assignments of error are overruled. The judgment of the trial court is affirmed.

*Judgment affirmed.*

SHANNON, P.J., HILDEBRANDT and GORMAN, JJ., concur.