Appellant Timothy Oldham appeals the decision of the trial court convicting him of three counts of rape, one count of kidnapping and aggravated robbery and sentencing him accordingly. Oldham assigns seven errors for our review.[1]
Having reviewed the record and the legal arguments of the parties, we affirm the decision of the trial court. The apposite facts follow.
On May 13, 1997, Tiffany Bailes and an acquaintance, Cynthia Robinson, went to Page Avenue where they began socializing with friends. Appellant Timothy Oldham (aka "Poncho") was also in the area with his friend, Robert Cratic. Oldham approached Robinson and asked where he could purchase some crack cocaine. Robinson replied that she could direct him to some crack cocaine. She then asked Bailes if she wanted to accompany them to Oldham's house. The four proceeded in Oldham's car to the next block where Robinson purchased crack cocaine. Thereafter, the group proceeded to the store to purchase beer and wine.
The group returned to Oldham's house. Robinson and Oldham went into the living room while Bailes and Cratic sat in the dining room. Robinson and Oldham began to smoke crack cocaine while while Cratic and Bailes drank beer. After about twenty minutes, Oldham and Robinson returned to the dining room and Cratic mentioned getting money from his girlfriend in order to buy more crack. A short time later, Cratic's girlfriend arrived but left shortly thereafter. Bailes, Oldham, Robinson, and Cratic went back to the store. Oldham purchased beer and wine while Robinson purchased crack cocaine on a nearby street.
The group returned to Oldham's house. Again, they consumed cocaine and alcohol. Bailes fell asleep. When she awakened, it was approximately 12:00 midnight. Oldham asked Bailes if she was hungry. When Bailes replied yes, Oldham prepared a hamburger for Bailes. Thereafter, Bailes and Oldham watched television for about an hour.
Bailes announced that she was about to leave and walked to the door. Oldham followed Bailes to the door. When Bailes pulled on the door in an attempt to open it, Oldham grabbed her arm and said she was not going anywhere because she owed him. Oldham then slapped Bailes and told her that he wanted her to perform oral sex upon him. Oldham pulled her into the dining room and sat her on the couch. Oldham then took Bailes' purse, emptied its contents and asked Bailes where her money was. When she replied she didn't have any money, Oldham said he would just keep her purse. She asked him for her medical card so that she could keep her medical appointment the following day. Bailes was three months pregnant. Oldham said he would return her papers as soon as she performed oral sex upon him.
Oldham sat Bailes down on the couch, exposed his penis and told her to go ahead. When she hesitated, he smacked her in the face, grabbed her by the hair and pulled her head close to him. Thereafter, Bailes began performing oral sex upon him and continued for ten or fifteen minutes.
At one point, a friend of Oldham's came to the door. Oldham stopped his attack on Bailes, but resumed after his friend left. Oldham then told Bailes he was tired of standing up and ordered her to kneel in front of him as he sat down on the couch. When she failed to immediately comply with his order to resume performing oral sex upon him, Oldham struck her again, grabbed her hair, and pulled her head up and down on his penis. After about ten or fifteen minutes, Oldham announced his intention to have sexual intercourse. Bailes pleaded with Oldham to let her go, but he ignored her pleas.
Oldham guided Bailes upstairs to his bedroom, ordered her to remove her clothes, forced her legs apart with his knees, and vaginally raped her. After about five minutes, he stopped and ordered Bailes to resume performing oral sex upon him. When she refused, he struck her twice, then forced her down on the bed and sat on her stomach. He grabbed her hair in an attempt to force her head into position to resume performing oral sex. He then said that if she performed oral sex upon him for ten more minutes, he would let her go. Bailes complied and after about 15 minutes, Bailes stopped and asked if she could leave. Oldham said "go ahead and go." Bailes left and called police from a nearby pay phone.
Police went to Oldham's home. Cratic answered the door. Police asked him if he was "Poncho," the name given them by Bailes as the man who raped her. Cratic said no and offered to get "Poncho." After a few minutes, Oldham went to the door. When police asked "Are you Poncho?" Oldham replied "I didn't do nothing to that girl." Police asked him to step outside and Bailes identified him as her attacker.
Oldham was arrested and charged with three counts of rape, one count of kidnapping, and one count of aggravated robbery. Each count had a sexual motivation specification and a sexually violent predator specification. Before trial, the state dismissed the aggravated robbery count and the sexual motivation specifications. After a trial, a jury convicted Oldham of the three rape counts and of kidnapping. The trial court determined Oldham was a sexually violent predator. Oldham was sentenced to three terms of nine years to life for the rape counts, and eight years for kidnapping.
The sentences were ordered to run consecutively. This appeal followed.
In his first assignment of error, Oldham argues the trial court lacked jurisdiction to decide his sexually violent predator specification because no written jury waiver was signed or filed as part of the record. In support of his argument, Oldham points to R.C. 2945.05 which provides that a jury trial waiver "shall be in writing, signed by the defendant, and filed in said cause and made a part of the record thereof."
Though Oldham urges us to follow R.C. 2945.05, the applicable statute in this case is R.C. 2971.02 which provides:
 In any case in which a sexually violent predator specification is included in the indictment, count in the indictment, or information charging a sexually violent offense and in which the defendant is tried by a jury, the defendant may elect to have the court instead of the jury determine the specification. * * * If the defendant elects to have the court determine the specification, the defendant shall be tried on the charge of the offense before the jury, and, following a verdict of guilty on the charge of the offense, the court shall conduct a proceeding at which it shall determine the specification.
Through his attorney, Oldham stated in open court that he wanted the court to determine the sexually violent predator specification. Oldham does not argue that he wanted the jury to hear the specification and, indeed, our review of the transcript reveals clearly that he sought to avoid having the jury determine the specification.
 COURT: For the record, do you want me to bring this jury back in, read the sexually violent predator definition in Revised Code Section 2927.01 and ask them to go back and determine, with respect to Counts One, Two and Three, whether or not the defendant is a sexually violent [predator]?
 MR. PERL: No. * * * We have discussed it a little bit and we decided now that we wish the Court to decide that issue.
(Tr. 785-786.)
The trial court complied with R.C. 2971.02 which applies specifically to sexually violent predator specifications. It is well settled that specific statutory provisions prevail over general provisions. See Trumbull Cty. Bd. of Health v. Snyder
(1996), 74 Ohio St.3d 357; Johnson's Markets, Inc. v. NewCarlisle Dept. of Health(1991), 58 Ohio St.3d 28.
Furthermore, the Ohio Supreme Court has held that the provisions of R.C. 2945.05 do not apply to requests made by a defendant to have the trial judge determine specifications. Statev. Nagel(1999), 84 Ohio St.3d 280.
 R.C. 2945.05, by its very terms, applies to pending "criminal cases." * * * Our understanding of the phrase is that it encompasses the underlying charge or charges in the criminal action against the accused but does not necessarily encompass the specification or specifications attached thereto. The reason, of course, is that a specification is, by its very nature, ancillary to, and completely dependent upon, the existence of the underlying criminal charge or charges to which the specification is attached. Therefore, we have difficulty understanding precisely how it is that R.C. 2945.05 could be found to apply in circumstances where, as here, a defendant has received a jury trial on the merits of the underlying charges alleged in the indictment.
Id. at 286.
We conclude that Nagel is controlling in this case. Oldham, however, argues that the controlling case is State v. Pless
(1996), 74 Ohio St.3d 333. In Pless, the Supreme Court held that:
 In a criminal case where the defendant elects to waive the right to trial by jury, R.C. 2945.05 mandates that the waiver must be in writing, signed by the defendant, filed in the criminal action and made part of the record thereof. Absent strict compliance with the requirements of R.C. 2945.05, a trial court lacks jurisdiction to try the defendant without a jury.
In Nagel, the Supreme Court pointed out that:
 Pless mandates strict compliance with the requirements of R.C. 2945.05, but does not mandate compliance with R.C. 2945.05 where that statute is clearly inapplicable. Here, R.C. 2945.05 had no applicability to appellee's request to have the trial judge determine the existence of the prior — conviction specifications and the criminal case against appellee was, in fact, tried by jury. Therefore, appellee's reliance on Pless is misplaced.
In the concurring opinion in Nagel, Justice Cook specifically characterized Pless as a statutory construction case. She went on to state that "Pless is a narrow opinion; it does not hold that every non-jury determination of guilt must meet the R.C. 2945.05
requirements." This analysis is the better approach for disposing of specifications like the ones in Nagel and the one here.
However, Oldham argues that a sexual violent offender specification is different. He urges that it requires more proof and more depth than the ordinary specification case and thus a waiver must adhere to R.C. 2945.05. We, of course, are driven by the language of R.C. 2971.02. It mirrors the statutory language in the specification statutes of Nagel. The goal of both R.C.2971.02 and the Nagel statutes are to guarantee that a defendant is not prejudiced by prior conviction data. Justice Cook made the following observation:
 The patent motivation of the General Assembly in enacting R.C. 2945.05 was to ensure that a defendant's waiver of his constitutional right to trial by jury was express and recorded. By contrast, the intent of the General Assembly in former R.C. 2941.142 and 2941.143 was to shield a defendant from a prejudiced jury by allowing evidence of a prior conviction to be withheld from the jury. See State v. Allen (1987), 29 Ohio St.3d 53, 55, 29 OBR 436, 438, 506 N.E.2d 199, 201 ("The existence of a prior offense is such an inflammatory fact that ordinarily it should not be revealed to the jury unless specifically permitted under statute or rule.)
We conclude that the intent of R.C. 2971.02 is the same as other specification statutes. Accordingly, the rationale of Nagel
is applicable to this case. Oldham's first assignment of error is overruled.
In his second assignment of error, Oldham argues his conviction was against the manifest weight of the evidence. He argues that Tiffany Bailes was not a credible witness and that the state failed to prove the element of force necessary to support a rape conviction. Determining whether a conviction is against the manifest weight of the evidence requires the court to examine the record and decide if the evidence presented has the necessary probative value and certainty to support a criminal conviction.State v. Getsy(1998), 84 Ohio St.3d 180, 193. The court should uphold the factfinder's decision unless the evidence weighs heavily against the conviction. State v. Thompkins(1997),78 Ohio St.3d 380, 387.
Oldham's assertion that Tiffany Bailes' testimony was not credible does not mandate reversal of his conviction. The jury, who had the opportunity to observe the witness' demeanor, was in the best position to assess her credibility. State v. Amburgey
(1987), 33 Ohio St.3d 115, 117. The jury believed Bailes' testimony. We cannot conclude that, by doing so, the jury lost its way and created such a manifest miscarriage of justice that his conviction should be reversed and a new trial ordered. SeeState v. Martin(1983), 20 Ohio App.3d 172, 175. Oldham's second assignment of error is overruled.
In his third assignment of error, Oldham argues that the trial court's determination that he was a sexually violent predator was based upon insufficient evidence. When evaluating the sufficiency of the evidence, the court must view the evidence in the light most favorable to the prosecution and determine whether any rational factfinder could have found the elements of the crimes charged beyond a reasonable doubt. Getsy at 193 (citations omitted.) Unless the appellate court finds that reasonable minds could not have convicted the defendant, the verdict will not be disturbed. Id.(citing State v. Jenks(1991), 61 Ohio St.3d 259,273). See also Thompkins at 387.
R.C. 2971.01(H)(1) defines a "sexually violent predator" as a person who has been convicted of or pleaded guilty to committing a sexually violent offense and is likely to engage in the future in one or more sexually violent offenses. Rape is a sexually violent offense as defined by R.C. 2971(L)(1). In determining whether a person is likely to engage in the future in one or more sexually violent offenses, the trial court may consider the following factors as outlined in R.C. 2971.01(H)(2)(a) through (f): the person has been convicted two or more times, in separate criminal actions, of a sexually oriented offense; the person has a documented history from childhood, into the juvenile developmental years, that exhibits sexually deviant behavior; available information or evidence suggests that the person chronically commits offenses with a sexual motivation; the person has committed one or more offenses in which the person has tortured or engaged in ritualistic acts with one or more victims; the person has committed one or more offenses in which one or more victims were physically harmed to the degree that the particular victim's life was in jeopardy; or any other relevant evidence.
The state conceded that Oldham had not been convicted of sexually oriented offenses two or more times, that they had no documented history from Oldham's childhood, and that they had no evidence that Oldham chronically committed offenses with a sexual motivation. However, the evidence revealed that Oldham tortured Bailes by slapping her several times, placing his body weight on her stomach and forcing her into positions where her stomach was compressed for extended periods of time, and repeatedly raping her over a span of three hours. There was also a statement given by Robert Cratic to the police that he feared for his life and for Bailes' life during the incident.[2] We conclude the trial court had, sufficient evidence upon which to base its conclusion that Oldham was a sexually violent predator. Based upon the evidence presented, the trial court had sufficient evidence to support its finding that Oldham was a sexually violent predator. Oldham's third assignment of error is overruled.
In his fourth assignment of error, Oldham argues he was denied his right to a fair trial by the purposeful misconduct of the prosecutor. Specifically, he argues the prosecutor improperly asked witnesses to comment on the veracity of other witnesses, made disparaging remarks about Oldham and attributed statements to Oldham that he never made.
In order for improper remarks to constitute prosecutorial misconduct, the remarks must be improper and must prejudicially affect substantial rights of the accused. State v. Mason(1998),82 Ohio St.3d 144, 161; State v. White(1998), 82 Ohio St.3d 16,22; State v. Clemons(1998), 82 Ohio St.3d 438, 451. In this case, the prosecutor's disparaging comments about Oldham were made during opening statements. The trial court specifically instructed the jury that opening statements were not evidence and should not be considered as such. (Tr. 210.) Because the jury is presumed to have followed the instructions of the trial court, we cannot find that such remarks were prejudicial to Oldham.
With respect to the prosecutor's questioning of witnesses about the veracity of other witnesses, we agree-with Oldham that such questioning has repeatedly been held to be improper. However, we must note that Oldham failed to object to the challenged questions and has waived all but plain error. State v. McClellan
(1994), 93 Ohio App.3d 315, 326. Furthermore, in order to constitute plain error, the improper questioning must have substantially affected the outcome of the trial. Id. In light of the other evidence presented by the state at trial, we cannot conclude that the jury would not have convicted Oldham absent the challenged questioning. Accordingly, Oldham's fourth assignment of error is overruled.
In his fifth assignment of error, Oldham argues he was denied the effective assistance of counsel because his trial counsel failed to object to the prosecutor's misconduct and failed to effectively cross-examine the victim, Tiffany Bailes, as to her use of drugs and her criminal record. A showing of ineffective assistance of trial counsel must include a showing that counsel's performance was deficient and that the deficient performance prejudiced the defense. Strickland v. Washington(1984),466 U.S. 668, 687.
In our discussion of Oldham's fourth assignment of error, we determined that the prosecutor's actions did not constitute prosecutorial misconduct. Accordingly, Oldham cannot show that he was prejudiced by trial counsel's failure to object to the challenged conduct. With respect to trial counsel's alleged failure to introduce evidence regarding Tiffany Bailes' drug use and criminal record, a review of the transcript reveals that this information was made known to the jury by the prosecution during Bailes' direct examination.
 Q: You are also a drug user; is that right?
A: Yes.
 Q: Have you gotten in any trouble in your past as a result of your drug abuse?
A: Yes, I have.
 Q: You're not just smoking marijuana, are you?
A: No, drinking and cocaine.
Q: Have you since stopped using cocaine?
A: Yes, I have.
Q: Why did you stop?
 A: For two reasons; one, that I'm pregnant, and that I'm on probation.
 Q: That's because you were found guilty of using cocaine?
A: Yes.
Q: Did you admit your guilt?
A: Yes, I did.
 Q: For how many years were you using crack cocaine before you got pregnant?
 A: A few. How many? Uhm, let me see. About six years, seven years.
(Tr. 355-356.)
Our review at the transcript also reveals that, on cross-examination, Oldham's trial counsel asked Bailes several questions about her drug use and criminal record.
 Q: [Y]ou've already testified that you've been convicted for felony drugs; is that correct?
A: Yes.
 Q: And at the time of this incident you were apparently being monitored or supervised by probation?
A: Yes.
(Tr. 417.)
 Q: Now, you're a, as you testified, a former convicted crack abuse —
A: Yes.
 Q: — cocaine abuser. You're being monitored by probation?
A: Uhm-hum.
(Tr. 420.)
We conclude that Oldham's trial counsel did effectively cross-examine Tiffany Bailes about her drug use and drug convictions. Oldham's fifth assignment of error is overruled.
In his sixth assignment of error, Oldham argues that because the crimes of rape and kidnapping were allied offenses of similar import under the facts of this case, the trial court improperly convicted him of both crimes. Two crimes are allied offenses when the elements of the two offenses correspond to such a degree that commission of one offense results in the commission of the other.State v. Reynolds(1998), 80 Ohio St.3d 670, 681; State v.Robertson(Nov. 13, 1998), Cuyahoga App. No. 56330, unreported. If two crimes are allied offenses of similar import, both may be submitted to the jury, but the defendant may only be convicted of one of the two offenses. See State v. Goff(1998), 82 Ohio St.3d 123,135; R.C. 2941.25(A).
Oldham argues he was improperly convicted of both rape and kidnapping under the facts of his case because the kidnapping occurred in order to facilitate the rape. In support of his argument, he cites State v. Donald(1979), 57 Ohio St.2d 73 in which the Ohio Supreme Court held that kidnapping is an offense of similar import to rape. Id. at 75. However, under R.C. 2941.25
(B), a defendant may be convicted of both offenses where the offenses are committed separately or with a separate animus as to each offense.
In State v. Logan(1979), 60 Ohio St.2d 126; the Ohio Supreme court acknowledged that Donald left open the issue of whether rape and kidnapping were allied offenses where the offenses were committed separately or with a separate animus. Logan at 128, n. 1. Where the restraint of the victim subjects her to a substantial increase in risk of harm separate and apart from that involved in the underlying crime, kidnapping and rape are committed with a separate animus. State v. Reynolds(1998),80 Ohio St.3d 670, 682, certiorari denied (1998), 118 S.Ct. 2328.
In this case, the evidence revealed that Bailes was pregnant at the time of the assault. She testified that, while restraining her, Oldham sat on her stomach. He also forced her to remain in a position in which a metal bar on a sofa bed was compressing her stomach for an extended period of time. From these facts, it is clear that Oldham's act of restraining Bailes subjected her to an increased risk of harm separate from that of the rape. Accordingly, the state's evidence supported separate convictions for rape and kidnapping.
Oldham also argues he should not have been convicted for two counts of rape based on fellatio. He refers to a statement made by the prosecutor during opening statement that two incidents of fellatio occurred in the living room. Oldham argues that the two incidents of fellatio in the living room were part of a continuous event.
We must begin our analysis of this issue by noting that Oldham's reliance on the prosecutor's statements during opening statement is misplaced. It is well settled that opening statements are not evidence and are not to be considered as such. Moreover, Oldham's argument ignores the fact that the state produced evidence that another incident of fellatio occurred in Oldham's bedroom after Bailes was vaginally raped. That incident was separate in time and location from what occurred in the living room and was properly charged as a separate count of rape. We agree with the trial court that the evidence revealed there were three separate incidents of rape — an incident of fellatio followed by vaginal intercourse and then another incident of fellatio. See State v. Jones (1997), 78 Ohio St.3d 12,14 (two acts of oral rape committed within a short period of time were committed with separate animus where they were separated by a intervening act of vaginal penetration.) Oldham's sixth assignment of error is overruled.
In his seventh assignment of error, Oldham argues the trial court erred in admitting Robert Cratic's statement to the police.
Evid.R. 613(B) provides:
 Extrinsic evidence of a prior inconsistent statement by a witness is not admissible unless the witness is afforded a prior opportunity to explain or deny the same and the opposite party is afforded an opportunity to interrogate him thereon, or the interests of justice otherwise require.
(Emphasis added.)
In this case, Cratic testified for the defense that the sexual conduct between Oldham and Bailes was consensual. During his testimony, he admitted that he told a different story in his statement to police. On redirect, he testified that the police pressured him into giving a statement implicating Oldham. However, the state was denied an opportunity to conduct a re-cross examination of Cratic because he failed to return to court to complete his testimony.
Because the state was denied an opportunity to conduct a full cross examination of Cratic, the court acted within its discretion to allow extrinsic evidence of the statement in order to impeach Cratic. Oldham's seventh assignment of error is overruled.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
TERRENCE O'DONNELL, P.J. CONCUR; TIMOTHY E. McMONAGLE, J. CONCURS.
 ___________________________________ PATRICIA ANN BLACKMON JUDGE
N.B. This entry is an announcement of the court's decision. See App.R. 22(B), 22(D) and 26 (A); Loc.App.R. 22. This decision will be journalized and will become the judgment and order of the court pursuant to App.R. 22(E) unless a motion for reconsideration with supporting brief, per App.R. 26 (A), is filed within ten (10) days of the announcement of the court's decision. The time period for review by the Supreme Court of Ohio shall begin to run upon the journalization of this court's announcement of decision by the clerk per App.R. 22(E). See, also, S.Ct.Prac.R. II, Section 2(A)(1)
[1] See Appendix.
[2] Though the statement was admitted into evidence only on the issue of Cratic's credibility, the rules of evidence do not apply in sexual predator determination hearings. Cratic admitted making the statement, and therefore it can be deemed reliable hearsay which was properly considered by the trial court.
 APPENDIX
ASSIGNMENTS OF ERROR
 I. THE TRIAL COURT HAD NO JURISDICTION TO HEAR TIMOTHY OLDHAM'S SEXUAL VIOLENT PREDATOR SPECIFICATION BECAUSE A WRITTEN JURY WAIVER WAS NEVER SIGNED OR FILED AS PART OF THE RECORD AS REQUIRED UNDER R.C. 2945.05.
 II. TIMOTHY OLDHAM WAS DENIED HIS FREEDOM WITHOUT DUE PROCESS OF LAW BY HIS CONVICTION WHICH WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 III. TIMOTHY OLDHAM'S RIGHT TO DUE PROCESS OF LAW, AS GUARANTEED BY THE UNITED STATES AND OHIO CONSTITUTIONS, WAS DENIED WHEN THE TRIAL JUDGE DETERMINED HE WAS A SEXUALLY VIOLENT PREDATOR ON EVIDENCE WHICH WAS INSUFFICIENT AS A MATTER OF LAW.
 IV. TIMOTHY OLDHAM'S RIGHT TO A FAIR TRIAL, GUARANTEED BY THE DUE PROCESS PROVISIONS OF ARTICLE I, SECTION 16 OF THE OHIO CONSTITUTION AND FIFTH, SIXTH AND THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION WERE VIOLATED BY THE PURPOSEFUL MISCONDUCT OF THE PROSECUTOR.
 V. TIMOTHY OLDHAM WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 10 THE OHIO CONSTITUTION.
 VI. TIMOTHY OLDHAM WAS BEEN DEPRIVED OF HIS CONSTITUTIONAL RIGHT NOT TO BE PLACED IN DOUBLE JEOPARDY FOR THE SAME OFFENSE BY HIS CONVICTIONS FOR RAPE AND KIDNAPPING AS THE CRIMES ARE, UNDER THE FACTS OF THIS CASE, ALLIED OFFENSES OF SIMILAR IMPORT.
 VII. THE TRIAL COURT COMMITTED REVERSIBLE ERROR IS ADMITTING AND GIVING TO THE JURY A WITNESSES' [sic] HEARSAY STATEMENT TO THE POLICE. COURT OF APPEALS OF OHIO, EIGHTH DISTRICT