JOURNAL ENTRY AND OPINION
Defendant-appellant Kevin Carter appeals his conviction for promoting prostitution in violation of R.C. 2907.22. The appellant was sentenced to a term of eleven months incarceration and fined one thousand dollars.
Cleveland Police Detective Rowland Mitchell is assigned to the Strike Force Unit. The unit itself investigates sexual offenses involving prostitution, robbery, burglary, and other incidental offenses. On April 11, 2001, Mitchell and his partner, Detective Leland Edwards, were involved in a reverse sting operation. A reverse sting is an investigation in which an undercover male police officer poses as a john[1], as opposed to a sting operation in which a female officer poses as a prostitute.
A prostitute[2] can be identified by a casual walk and a beckoning of the head, a nod, a wave or a smile directed at vehicles driven by lone males. When the prostitute approaches she will question the driver as to what he is looking for, or what he is interested in. The word dating in street terms indicates that a woman is working as a prostitute. A pimp mediates the transaction between the john and the prostitute and it is his responsibility to supervise and transport the prostitute, provide safety, provide warning when the police are approaching, and coordinate activities. A pimp may be identified by dress, or vehicle, and an observable link between the pimp and the prostitute. Detective Mitchell testified before the jury that it is difficult to build a case against a pimp because of the need for independent evidence such as information from the prostitute.
Detective Mitchell testified that based on his years of experience, Lorain Avenue in Cleveland is a location frequently plagued by prostitution. On the evening in question here, he was in the undercover vehicle near Lorain and West 44th Street and his partner was in another vehicle located near West 47th Street. Detective Mitchell observed a woman he believed to be working as a prostitute enter a vehicle, leave the area, proceed down a side street, and fifteen to twenty minutes later return to the same area. This happened two or three times. As he was watching this woman, Detective Mitchell observed a GMC utility vehicle continuously circling the area. Based upon his experience, Detective Mitchell testified that this vehicle appeared to be shadowing and protecting the prostitute.
After the prostitute returned the second time, she approached the undercover police vehicle driven by Detective Mitchell. Through conversation, the detective learned that the woman was dating. She asked him to expose his private parts[3], but as Mitchell attempted to verbally dodge this request, the GMC truck returned to Lorain Avenue. The woman stated that she had to make a telephone call and proceeded to the nearby gasoline station to the pay telephone. This was the same area in which the truck was located. Detective Mitchell radioed his partner with the license plate of the GMC truck and requested that the truck be investigated.
At this point, Detective Mitchell observed another prostitute on the street and a man from the GMC truck exit the vehicle and, along with the prostitute, enter a separate vehicle and leave the area. Detective Mitchell continued to follow the GMC truck. Detective Edwards, who was driving an unmarked detective vehicle with take-down lights and a siren, stopped the GMC truck driven by the appellant. The officers learned that the appellant was driving with a suspended license and placed him under arrest. During the subsequent inventory, the identification card of Nicole Henderson, the prostitute Detective Mitchell had been observing, was found underneath the visor. A videotape entitled Pimpology, It Is What It Is was also found in the vehicle. After the appellant was advised of his Miranda rights, he stated that he did not know Ms. Henderson. When informed that the police had recovered her identification, the appellant stated that, he did not have her working the streets, that she was working the streets because she wanted to. (T. 56). The appellant also stated that the video had been a gift from his girlfriend/wife. The appellant was wearing a jogging suit, a chain with a large gold pendant, and a few rings. No money was recovered. Ms. Henderson was charged with soliciting rides on the highway.
The testimony of Detective Leland Edwards corroborated that of his partner. Detective Edwards stated that he activated his take-down lights and siren when he stopped the appellant's vehicle.
Over objection, and after the court conducted an in-camera review, the first ten to fifteen minutes and the closing of the videotape were shown to the jury.
The appellant's fourth assignment of error is dispositive and will be considered first:
 THE TRIAL COURT COMMITTED PREJUDICIAL ERROR IN THE ADMISSION OVER OBJECTION OF THE VIDEO TAPE, ADMISSION OF NON EXPERT OPINIONS FROM THE DETECTIVES, THE ADMISSION OF TESTIMONY WHOSE PROBATIVE VALUE WAS SUBSTANTIALLY OUTWEIGHED BY THE DANGER OF UNFAIR PREJUDICE CONFUSION OF THE ISSUES, OR OF MISLEADING THE JURY.
The appellant argues that the introduction of the videotape to the jury abridged the appellant's first amendment freedom of speech rights; that it was not relevant to the trial; and that the video was used in the nature of impermissible character evidence. The appellant also objects to the testimony of the officers that Ms. Henderson was a prostitute because the officers were not testifying as experts and because the testimony gave an opinion on an ultimate issue of fact.
The threshold of admissibility of evidence is a low one, reflecting the policy favoring the admission of relevant evidence for the trier of fact to weigh. State v. Baker (Aug. 23, 1999), Clermont App. No. CA98-11-108. The question of relevancy is one for the trial court to resolve out of its common experience and logic. State v. Lyles (1989), 42 Ohio St.3d 98,99, 537 N.E.2d 221. The admission or exclusion of evidence is within the discretion of the trial court. State v. Sage (1987), 31 Ohio St.3d 173,510 N.E.2d 343, syllabus two.
Evid.R. 402 provides that all relevant evidence is admissible, except as otherwise provided, and one exception is the use of character evidence. Character evidence has been defined as circumstantial evidence which gives rise to an inference which tends to establish conduct on a particular occasion. Note to Evid. R. 404. The rule states the basic prohibition on using character evidence to establish conduct on a particular occasion and then the rule sets forth the exceptions to the prohibition. Specifically, Evid.R. 404(A) states that evidence of a person's character or a trait of his character is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion save for certain exceptions. Evidence of a pertinent trait of an accused's character may be offered by an accused or by the prosecution to rebut the evidence submitted by the accused. Evid.R. 404(A)(1). Under 404(B) evidence of other crimes, wrongs, or acts is not admissible to prove character, but is admissible proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.
In the matter at hand the appellant was convicted of promoting prostitution, defined by the legislature at R.C. 2907.22 in pertinent part as follows:
(A) No person shall knowingly
* * *
 (2) Supervise, manage, or control the activities of a prostitute in engaging in sexual activity for hire;
Clearly, it is the trial court's responsibility to determine the admissibility of evidence. Evid.R. 104(A). State v. Heinish (1990),50 Ohio St.3d 231, 553 N.E.2d 1026. In State v. Lundgren,73 Ohio St.3d 474; 1995 Ohio 227; 653 N.E.2d 304, the court found that the probative value of admitted photographs did not outweigh their prejudicial effect. The Ohio Supreme Court found that the trial court abused its discretion in admitting the photos. However, even where a court abuses its discretion in the admission of evidence, the court determined that there must be a review to determine whether the evidentiary ruling affected a substantial right of the defendant. Evid.R. 103 and Crim.R. 52(A).
This court has reviewed State v. McClellan (1994), 93 Ohio App.3d 315
and finds it instructive on the issue of relevance. In McClellan, the defendant was charged with rape. A search of his apartment found written materials advocating pedophilia. The court found this material to advocate, support and advise the reader in an activity prohibited by law. The court used the analogy of finding a book on how to build a bomb in the residence of a person suspected of setting off a bomb.
The matter at hand is comparable because the video in question arguably advises the viewer in an activity prohibited by law, that of promoting prostitution. This court cannot find that the trial court abused its discretion in finding the tape relevant, given that the threshold of admissibility is low. However, as noted supra, this does not end the analysis and this court must consider whether the evidence was more prejudicial than probative. The police officers observed the movements of the prostitute and the appellant, and from those movements the officers were able to infer the relationship between these two individuals. However, these two individuals were never observed speaking together or communicating in any manner. It is only because the officers, in their experience, were able to ascertain the relationship between the prostitute and the appellant that the appellant was charged. While the evidence was certainly sufficient[4], it is not overwhelming evidence of guilt as required under State v. Lundgren, 73 Ohio St.3d 474, and without overwhelming evidence, this court may not find the admission of this particular tape harmless. The video found in the appellant's vehicle was more prejudicial than probative and should not have been submitted to the jury for their consideration. The fourth assignment of error is well taken. The first, second and third assignments of error:
 DEFENDANT-APPELLANT WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION.
 DEFENDANT-APPELLANT'S CONVICTIONS WERE CONTRARY TO THE MANIFEST WEIGHT OF THE EVIDENCE. PROSECUTORIAL MISCONDUCT DENIED APPELLANT HIS CONSTITUTIONAL RIGHT TO A FAIR TRIAL.
The appellant's first, second and third assignments of error are moot pursuant to App.R. 12.
Judgment reversed and remanded for a new trial. This cause is reversed and remanded for a new trial. It is, therefore, considered that said appellant(s) recover of said appellee(s) his costs herein.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
JAMES J. SWEENEY, J., CONCURS; COLLEEN CONWAY COONEY, J., DISSENTS WITH DISSENTING OPINION ATTACHED.
[1] Detective Mitchell defined a john as someone looking to purchase sexual favors.
[2] This court acknowledges that johns and prostitutes may be either gender. In this particular instance, the officers are directing their testimony to a situation in which the john is male and the prostitute is female.
[3] Apparently this is a common practice to ensure that the john is not a police officer.
[4] State v. Thompkins (1997), 78 Ohio St.3d 380.